# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FERRIN MOORE<br>10554 South Grant Ave<br>Manassas, VA 20110<br>    Plaintiff,<br><br>   v.<br><br>DAN BROUILLETTE, Secretary<br>U.S. Department of Energy<br>1000 Independence Ave., S.W.<br>Washington, DC 20585<br>    Defendant. | Civil Action No. |

## COMPLAINT

Plaintiff Ferrin Moore ("Plaintiff" or "Mr. Moore"), by and through his attorneys at the Clark Law Group, PLLC, files this action, following exhaustion of his administrative remedies, and alleges as follows:

## NATURE OF ACTION

1. This is a challenge to the U.S. Department of Energy's ("Defendant" or "Agency") unlawful discrimination on the basis of disability and retaliation against Plaintiff for protected activity in violation of the Rehabilitation Act of 1973, 29 U.S.C § 701, *et seq.* ("Rehab Act").

2. To remedy the Defendant's discriminatory conduct, Plaintiff seeks back pay, front pay, compensatory damages, attorneys' fees and costs, injunctive relief, and other equitable relief this Court deems appropriate.

## JURISDICTION AND VENUE

3. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

4. The United States District Court for the District of Columbia has subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

5. The Court has subject-matter jurisdiction pursuant to 29 U.S.C. § 794a(a), as this matter involves a civil action by an aggrieved person under the Rehab Act.

6. The Court has personal jurisdiction over Defendant because Defendant conducts business in the District of Columbia.

7. Venue is properly laid in the District of Columbia because that was Plaintiff's primary place of employment.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

9. On July 19, 2019, Plaintiff made his initial contact with the Agency's EEO office.

10. On August 21, 2019, Plaintiff filed a formal complaint of discrimination and constructive discharge based on disability and retaliation with the Agency.

11. On September 19, 2019, the Agency issued a notice of acceptance of claims which stated that the Agency had supposedly received Plaintiff's formal complaint on September 6, 2019, but nevertheless would waive Plaintiff's deadline to file and accepted his claims.

12. As of the date of filing of Plaintiff's Complaint, no final action has been taken by the Agency on Plaintiff's claims.

Doc ID: 6cd85203637702e7d79ddd6ca60df9942f611858

13. Because more than one hundred and twenty-days having passed since Plaintiff submitted his formal complaint, Plaintiff's constructive discharge claims clams are deemed exhausted.  29 C.F.R. § 1614.310(g).

14. Because more than one hundred and eight-days having passed since Plaintiff submitted his formal complaint, Plaintiff's discrimination and retaliation clams are deemed exhausted.  29 C.F.R. § 1614.407(b).

## PARTIES

15. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

16. Mr. Moore is a resident of the Commonwealth of Virginia.

17. Defendant is the Secretary of the U.S. Department of Energy is the head of the Agency. The Agency has more than 500 employees.

## Background

18. Plaintiff is a former employee of Defendant's Office of Aviation Management.

19. Plaintiff began employment with Defendant in or around June 2009.

20. Plaintiff's employment was based in the District of Columbia.

21. Plaintiff's title was Aviation Policy Officer.

22. Plaintiff's first level supervisor was Glen Wattman, Director of Office of Aviation Management.

## Mr. Moore's Disability

23. In 2013, Mr. Moore was diagnosed with prostate cancer.

24. By January 2019, Mr. Moore's cancer had spread to his bladder.

25. Cancer is a medical condition that substantially impairs Plaintiff's normal cell growth.

Doc ID: 6cd85203637702e7d79ddd6ca60df9942f611858

26. Once Mr. Moore's cancer it spread to his bladder, the cancer substantially impaired Mr. Moore's ability to urinate.

27. Mr. Moore's cancer is a disability under the Rehab Act.

28. In 2013, Mr. Moore informed his supervisor Glenn Wattman of his cancer diagnosis.

### Mr. Moore's Requests for Accommodation

29. In or around January 2019, Mr. Moore learned that his cancer had spread to his bladder, which required him undergo additional medical treatment.

30. In or around January 2019, Mr. Moore informed Mr. Wattman that he needed to take leave in the future.

31. Mr. Wattman asked why Mr. Moore requested leave.  In response, Mr. Moore stated that his cancer had spread to his bladder and that he needed the leave for medical treatment for his cancer in the future, including surgery, follow up chemotherapy treatments, and medical appointments.

32. Mr. Moore's requests for leave were requests for accommodation.

33. In or around January 2019, Mr. Moore requested and was granted about two weeks of leave for surgery and recuperation related to his cancer.

34. In or around February 2019, after the surgery, Mr. Moore requested and was granted the ability to telework from his home instead of coming into the office because of his disability.

35. Mr. Moore's request for telework was a request for accommodation.

36. From February 2019 to August 2019, Mr. Moore repeatedly requested and was granted intermittent leave for medical appointments in the afternoons.

37. From February 2019 to June 2019, Mr. Moore underwent two rounds of chemotherapy.

Doc ID: 6cd85203637702e7d79ddd6ca60df9942f611858

38. Mr. Moore's chemotherapy included radiation sessions twice a week.

39. Mr. Moore requested and was granted leave twice a week from about February 2019 to June 2019.

40. Mr. Wattman approved of Mr. Moore's leave requests.

41. Mr. Wattman knew Mr. Moore leave requests were because of his disability.

### After Granting Plaintiff's Accommodation Requests, Mr. Wattman Responds with Hostility

42. After granting Mr. Moore's leave requests because of Plaintiff's disability, Mr. Wattman repeatedly complained to Mr. Moore about his use and taking of leave.

43. Mr. Wattman did not complain about Mr. Moore's use of leave taken in prior years unrelated to Plaintiff's disability.

44. Mr. Wattman repeatedly called Mr. Moore while on leave for his disability about work and pressured him to return to work.

45. Mr. Wattman did not call Mr. Moore while on leave in prior years unrelated to Plaintiff's disability or pressure him to return to work.

46. After Mr. Moore returned to work from his January 2019 surgery, Mr. Wattman began increasing Plaintiff's workload.

47. When Mr. Moore complained about the increased workload, Mr. Wattman claimed that Mr. Moore was not "at capacity" and continued to give him more work.

48. Mr. Wattman provided more work to Mr. Moore than his coworkers Patricia Hagerty and Daniel Monahon.

49. Patricia Hagerty and Daniel Monahon do not have disabilities.

50. In or around February/March 2019, Mr. Wattman made repeated derogatory "jokes" about Mr. Moore's cancer and medical treatment, including whether Mr. Moore was

Doc ID: 6cd85203637702e7d79ddd6ca60df9942f611858

wearing a diaper, or if he was sitting "on the pan" (a reference to medical device Mr. Moore sat on while undergoing treatment).

51. After January 2019, Mr. Wattman began to repeatedly use capitalization in his emails to Mr. Moore, which Mr. Moore understood as a written form of yelling.

**Mr. Wattman Disclosed Mr. Moore's Medical Information**

52. Plaintiff's duties involved communicating with private sector company representatives or public sector agency representatives trying to do business with the Agency ("customers").

53. When Mr. Moore went on leave for his disability, Mr. Moore advised his customers and coworkers that he would be "out of the office" and if they needed immediate assistance to contact Mr. Wattman.

54. Mr. Moore did not disclose his disability or reason for his leave to his customers or coworkers.

55. Mr. Moore did not authorize Mr. Wattman to disclose his disability or reason for his leave to Plaintiff's customers or coworkers.

56. In or around the spring of 2019, Mr. Moore learned that Mr. Wattman was disclosing Mr. Moore's disability to Plaintiff's customers and his coworkers.

57. In or around the spring of 2019, Plaintiff's coworker Dan Monahon told Plaintiff that he had heard that Mr. Moore was going to be "sitting in the chair," which Plaintiff understood to be referring chemotherapy for his cancer treatment.

58. Plaintiff did not disclose his cancer status to Mr. Monahon.

59. In or around the spring of 2019, Plaintiff's coworker Patricia Haggerty told Plaintiff that she had heard that his cancer had flared up.

60. Plaintiff did not disclose his cancer status to Ms. Haggerty.

Doc ID: 6cd85203637702e7d79ddd6ca60df9942f611858

61. In or around the spring of 2019, Plaintiff's customer Alex Bapty from the U.S. Department of Transportation, Office of Secure Transportation, asked Mr. Moore if his cancer had come back.

62. Plaintiff did not disclose his cancer status to Mr. Bapty.

63. In or around the spring of 2019, Plaintiff's customer Steven Warner from Sandia National Labs told Mr. Moore that Mr. Wattman was discussing Mr. Moore having cancer in his emails to him.

64. Plaintiff did not disclose his cancer status to Mr. Warner.

65. On information and belief, Mr. Wattman disclosed Mr. Moore's disability to Plaintiff's other customers.

66. On June 26, 2019, Mr. Wattman emailed Mr. Moore: "I'm stuck between making excuses and disclosing your private issues that have been distracting for you (health)."

67. Mr. Moore understood Mr. Wattman's email as admitting that Mr. Wattman had disclosed Plaintiff's disability to Plaintiff's customers.

### Mr. Wattman Threatens Mr. Moore

68. Mr. Wattman's June 26, 2019 email also threatened that Mr. Wattman would take "appropriate action" related to the "quality of life" and "working conditions" he had established for Mr. Moore.

69. Mr. Moore understood Mr. Wattman's statement about Plaintiff's "quality of life" and "working conditions" to be referring to his teleworking.

70. Mr. Moore forwarded Mr. Wattman's June 26, 2019 email to Ingrid Klob, Defendant's Director of Office of Management.

71. Ms. Klob was Mr. Wattman's first level supervisor and Plaintiff's second level supervisor.

Doc ID: 6cd85203637702e7d79ddd6ca60df9942f611858

72. Ms. Klob informed Mr. Moore that she considered the email to be threatening and that she would forward it to the Agency's security threat unit.

73. Mr. Moore was not informed of the result of the security threat unit's findings or whether Mr. Wattman was disciplined for his threatening email.

74. Due to Mr. Wattman's disclosures of Plaintiff's disability, Mr. Wattman's threatening and hostile email, and Defendant's failure to take any remedial action on Plaintiff's complaint, Mr. Moore reasonably resigned on August 8, 2019.

## COUNT I: HOSTILE WORK ENVIRONMENT

75. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

76. Plaintiff is disabled.

77. Plaintiff engaged in protected activity by requesting leave and telework as accommodations for his disability.

78. Mr. Wattman created a hostile work environment because of Plaintiff's disability and/or protected activities.

79. The hostile work environment created by Mr. Wattman included, without limitation, yelling at Plaintiff through email, interfering with Plaintiff's use of medical leave for his disability, increasing Plaintiff's workload, threatening to rescind Plaintiff's telework accommodation, and disclosing Plaintiff's disability to coworkers and customers.

80. The hostile work environment created by Mr. Wattman was so severe or pervasive as to alter the terms and conditions of Mr. Moore's employment.

81. Defendant was aware of the hostile work environment created by Mr. Wattman and refused to take corrective action.

Doc ID: 6cd85203637702e7d79ddd6ca60df9942f611858

## COUNT II: DISCLOSURE OF MEDICAL INFORMATION

82. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

83. Defendant obtained Mr. Moore's medical information through an employment related inquiry.

84. Mr. Moore's medical information was disclosed by Defendant and not treated as confidential.

85. Mr. Moore suffered emotional distress from Defendant's disclosure of his medical information to his coworkers and customers.

## COUNT III: CONSTRUCTIVE DISCHARGE

86. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

87. Plaintiff is disabled.

88. Plaintiff engaged in protected activity by requesting leave and telework as accommodations for his disability.

89. Plaintiff engaged in protected activity by requesting leave and telework as accommodations for his disability.

90. Mr. Wattman created a hostile work environment because of Plaintiff's disability and/or protected activities.

91. The hostile work environment created by Mr. Wattman included, without limitation, yelling at Plaintiff through email, interfering with Plaintiff's use of medical leave for his disability, increasing Plaintiff's workload, threatening to rescind Plaintiff's telework accommodation, and disclosing Plaintiff's disability to coworkers and customers.

Doc ID: 6cd85203637702e7d79ddd6ca60df9942f611858

92. The hostile work environment created by Mr. Wattman was so severe or pervasive as to alter the terms and conditions of Mr. Moore's employment.

93. Defendant was aware of the hostile work environment created by Mr. Wattman and refused to take corrective action.

94. The hostile work environment created by Mr. Wattman was so severe or pervasive that Mr. Moore reasonably resigned.

95. Plaintiff's resignation was a constructive discharge.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

A. Entry of judgment in favor of Plaintiff against Defendant;

B. Injunctive relief;

C. Front pay;

D. Back pay;

E. Compensatory damages in an amount to be determined at trial;

F. Pre-judgment interest as may be allowed by law;

G. Attorney's fees and costs; and

H. Other such relief as may be appropriate under the Rehab Act.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Doc ID: 6cd85203637702e7d79ddd6ca60df9942f611858

Respectfully submitted,

/s/ Jeremy Greenberg
Jeremy Greenberg (1024226)
Denise M. Clark (420480)
Clark Law Group, PLLC
1100 Connecticut Ave., N.W.
Suite 920
Washington, D.C. 20036
(202) 293-0015
jgreenberg@benefitcounsel.com
dmclark@benefitcounsel.com

Doc ID: 6cd85203637702e7d79ddd6ca60df9942f611858

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that 1) I have reviewed this Complaint; 2) Regarding the allegations of which I have personal knowledge, I believe them to be true; and 3) Regarding the allegations of which I do not have personal knowledge, I believe them to be true based on specified information, documents, or both and the foregoing is true and correct.

*Ferrin Moore*
_____
Ferrin Moore

Doc ID: 6cd85203637702e7d79ddd6ca60df9942f611858