# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

FERRIN MOORE,

       Plaintiff,

v.

DAN BROUILLETTE, *Secretary*,
*U.S. Department of Energy*,

       Defendant.

Civil Action No. 20-1060 (CKK)

## MEMORANDUM OPINION
(December 11, 2020)

In this case, Mr. Ferrin Moore ("Plaintiff") raises three claims under the Rehabilitation Act of 1973 against Secretary Dan Brouillette, in his official capacity as the Secretary of the United States Department of Energy ("Defendant"). Specifically, Plaintiff's Complaint asserts claims for a hostile work environment (Count I), disclosure of confidential medical information (Count II), and constructive discharge (Count III). *See* Compl. ¶¶ 75–95. Plaintiff's claims each derive from the alleged mistreatment he suffered as an employee of the Department of Energy ("DOE" or the "Agency") in 2019, while he was undergoing cancer treatment.

Now pending before the Court is Defendant's [12] Motion to Dismiss or, Alternatively, for Summary Judgment. Therein, Defendant moves to dismiss each of Plaintiff's claims under both Federal Rule of Civil Procedure 12(b)(6) and 56. *See* Def.'s Mot. at 1. Upon consideration of the briefing, the relevant authorities, and the record as a whole,[1] the Court will **DENY** Defendant's

---

[1] The Court's consideration has focused on the following briefing and material submitted by the parties:
- Compl., ECF No. 1;
- Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss or, Alternatively, for Summ. J. ("Def.'s Mot."), ECF No. 12-1;
- Pl.'s Opp'n to Def.'s Mot. to Dismiss or, Alternatively, for Summ. J. ("Pl.'s Opp'n"), ECF No. 13; and,
- Def.'s Reply, ECF No. 15.

motion for summary judgment **WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 56(d)(1). The Court also **DENIES** Defendant's Rule 12(b)(6) motion to dismiss Counts I and II of the Complaint.  The Court, however, **GRANTS** Defendant's motion to dismiss Count III of the Complaint and dismisses that claim **WITHOUT PREJUDICE**.

## I.   BACKGROUND

The Court begins it analysis by recounting the factual background in this case.  At this stage in the proceedings, the Court relies on the well-pled facts alleged in Plaintiff's Complaint. The Court, however, does not adopt the alleged facts set forth herein as its own.

Plaintiff began working at the DOE in June 2009.  *See* Compl. ¶ 19.  During his employment with the Agency, Plaintiff served as an Aviation Policy Officer within the DOE's Office of Aviation Management.  *See id.* ¶¶ 18, 21.  In this role, "Plaintiff's duties involved communicating with private sector company representatives or public sector agency representatives trying to do business with the [DOE]." *Id.* ¶ 52.  Plaintiff's first level supervisor within the Office of Aviation Management was Mr. Glen Wattman, who served as the Director of Office of Aviation Management.  *Id.* ¶ 22.

In 2013, while Plaintiff was working at the DOE, he was diagnosed with prostate cancer. *Id.* ¶ 23.  That same year, Plaintiff "informed his supervisor Glenn Wattman of his cancer diagnosis." *Id.* ¶ 28.  By January 2019, however, Plaintiff's "cancer had spread to his bladder," *id.* ¶ 24, which "substantially impaired [his] ability to urinate." *Id.* ¶ 26.  On account of this bladder cancer, Plaintiff learned in January 2019 that he would need "additional medical treatment," *id.* ¶ 29, and, accordingly, Plaintiff asked Mr. Wattman for medical leave, *see id.* ¶ 30.  When Mr. Wattman inquired into the reason for Plaintiff's leave request, Plaintiff explained that "his cancer had spread to his bladder and that he needed the leave for medical treatment for his cancer in the

future, including surgery, follow up chemotherapy treatments, and medical appointments." *Id.* ¶ 31.

"Mr. Wattman approved of [Plaintiff's] leave requests." *Id.* ¶ 40.  In January 2019, Plaintiff "was granted about two weeks of leave for surgery and recuperation related to his cancer." *Id.* ¶ 33.  Then beginning in February 2019, Plaintiff was granted "the ability to telework from his home instead of coming into the office." *Id.* ¶ 34.  Between February and June 2019, Plaintiff was also granted leave twice a week, so that he could undergo chemotherapy, which included two radiation sessions per week. *See id.* ¶¶ 37–39.

Around the time of Plaintiff's 2019 cancer treatment, however, his working relationship with Mr. Wattman began to fray.  "After granting [Plaintiff's] leave requests . . . Mr. Wattman repeatedly complained to [Plaintiff] about his use and taking of leave," even though Mr. Wattman had not complained about Plaintiff's prior leave requests that were unrelated to his cancer treatment. *Id.* ¶¶ 42–43.  Indeed, while Plaintiff was on leave in 2019, Mr. Wattman allegedly called Plaintiff repeatedly and "pressured him to return to work." *Id.* ¶ 44.  And after Plaintiff did return to work following his January 2019 surgery, Mr. Wattman "began increasing Plaintiff's workload," *id.* ¶ 46, claiming that Plaintiff was not "at capacity," *id.* at ¶ 47.  According to Plaintiff, Mr. Wattman provided him with "more work . . . than his coworkers Patricia Hagerty and Daniel Monahon," who did not have disabilities. *Id.* ¶¶ 48–49.  Moreover, Mr. Wattman allegedly began to "use capitalization in his emails" to Plaintiff, which Plaintiff "understood as a written form of yelling." *Id.* ¶ 51.

In February and March 2019, Mr. Wattman also began to make "repeated derogatory jokes about [Plaintiff's] cancer and medical treatment." *Id.* ¶ 50.  These "jokes" allegedly included comments about whether Plaintiff "was wearing a diaper" and whether Plaintiff "was sitting on

the pan, a reference to [the] medical device [Plaintiff] sat on while undergoing treatment." *Id.* Relatedly, Mr. Wattman allegedly disclosed Plaintiff's cancer to coworkers within the DOE, as well as Agency customers, without Plaintiff's authorization. *See id.* ¶¶ 53–65. For example, Mr. Wattman allegedly told one of Plaintiff's coworkers that Plaintiff would be "sitting in the chair," a reference to Plaintiff's chemotherapy treatment. *Id.* ¶ 57.

The workplace friction between Plaintiff and Mr. Wattman finally culminated in the summer of 2019. On June 26, 2019, Mr. Wattman sent Plaintiff an email stating that he "would take appropriate action related to the quality of life and working conditions he had established for [Plaintiff]." *Id.* ¶ 68 (quotations omitted). Plaintiff understood this email as a "threat" regarding his teleworking privileges. *See id.* ¶¶ 68–69. Consequently, Plaintiff provided this June 26, 2019 email to Ms. Ingrid Kolb, the Director of the Office of Management at the DOE and Mr. Wattman's immediate supervisor. *See id.* ¶¶ 70–71. Ms. Kolb allegedly informed Plaintiff "that she considered the email threatening," but Plaintiff received no further information regarding whether Mr. Wattman received any disciplinary sanctions. *Id.* ¶¶ 72–73. On July 19, 2019, Plaintiff contacted the DOE's equal employment opportunity office regarding Mr. Wattman's conduct, *see id.* ¶ 9, but Plaintiff ultimately resigned from his position at the Agency on August 8, 2019, *see id.* ¶¶ 74, 79.

Following his resignation from the DOE, Plaintiff "filed a formal complaint of discrimination and constructive discharge based on disability and retaliation with the Agency" on August 21, 2019. *Id.* ¶ 10; *see also* Def.'s Mot., Ex. 11, ECF No. 12-13 (Aug. 2019, EEO Compl.). Then, "[o]n September 19, 2019, the Agency issued a notice of acceptance of claims which stated that the Agency had supposedly received Plaintiff's formal complaint on September 6, 2019, but nevertheless would waive Plaintiff's deadline to file[,] and accepted his claims." Compl. ¶ 11.

But after more than one-hundred and eighty days passed from the filing of his formal complaint with the DOE and no final agency action had been taken, Plaintiff filed his present Complaint before this Court on April 22, 2020. *See id.* ¶¶ 12–14 (alleging exhaustion of administrative claims pursuant to 29 C.F.R. § 1614.310(g) and 29 C.F.R. § 1614.407(b)).

Therein, Plaintiff asserts claims against Defendant under the Rehabilitation Act of 1973 for a hostile work environment (Count I), disclosure of confidential medical information (Count II), and constructive discharge (Count III). *See* Compl. ¶¶ 75–95. On August 24, 2020, however, Defendant moved to dismiss Plaintiff's Complaint in its entirety for failure to state any claim for which relief can be granted. *See* Def.'s Mot. at 1 (citing Fed. R. Civ. P. 12(b)(6)). And although no formal discovery has taken place in this action, Defendant also moved in the alternative for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* Def.'s Mot. at 1. After complete briefing from the parties, Defendant's motion is now ripe for this Court's review.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts "do not accept as true, however, the plaintiff's legal

conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).[2]

### III.   DISCUSSION

The Court's analysis proceeds in three parts.   First, the Court sets out its rationale for **DENYING** Defendant's summary judgment motion **WITHOUT PREJUDICE** at this stage in the proceedings.   Next, the Court addresses the proper treatment of Defendant's thirteen documentary exhibits on a Rule 12(b)(6) motion to dismiss.   Finally, the Court considers each of Plaintiff's substantive claims.   For the reasons set forth herein, the Court will **GRANT** Defendant's motion to dismiss Count III of the Complaint under Rule 12(b)(6), but will **DENY** Defendant's motion to dismiss Counts I and II of the Complaint.

### A.   Defendant's Rule 56 Motion And Exhibits Outside Of The Pleadings

With his present motion, Defendant has attached thirteen documentary exhibits and moved, in the alternative, for the dismissal of Plaintiff's claims under the summary judgment standard. *See* Def.'s Mot. at 25; Fed. R. Civ. P. 56(a).   In response, Plaintiff contends that these exhibits constitute material outside the pleadings not properly considered at the motion to dismiss stage, and further argues that Defendant's summary judgment motion is premature.   *See* Pl.'s Opp'n at 1, 6.   To that end, Plaintiff has submitted a Rule 56(d) declaration, requesting this Court to defer its consideration of Defendant's summary judgment motion until after Plaintiff has had a sufficient opportunity to take discovery.   *See* Greenberg Decl., ECF No. 13-1 at 1–4.   This procedural dispute raises two threshold inquiries for the Court to address: (1) whether the Court should consider Defendant's summary judgment motion at this stage of the proceedings, and (2) if not, which of

---

[2] At this time, the Court will not consider the merits of Defendant's Rule 56 motion for summary judgment. *See* disc. *infra* at Section III.A.1 (discussing Fed. R. Civ. P. 56(d)).   Accordingly, the Court does not present the corresponding legal standard for such a motion in this Memorandum Opinion.

Defendant's thirteen exhibits may the Court consider when adjudicating Defendant's motion to dismiss under Rule 12(b)(6)?

### 1. Rule 56(d) Analysis

As to the first inquiry, the Court begins by noting that "[s]ummary judgment usually 'is premature unless all parties have had a full opportunity to conduct discovery.'" *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 530 (D.C. Cir. 2019) (quoting *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012)). Nonetheless, the Federal Rules of Civil Procedure make clear that "'a party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery.'" *Jeffries v. Barr*, 965 F.3d 843, 848 (D.C. Cir. 2020) (emphasis in original) (quoting Fed. R. Civ. P. 56(b)). Accordingly, Defendant was within his rights to file a motion for summary judgment in this action, even where no discovery has been taken by the parties. *See Jeffries*, 965 F.3d at 848 ("DOJ moved for summary judgment before any formal discovery had taken place, and the District Court granted that motion."); *Haynes*, 924 F.3d at 533 (affirming trial court's grant of summary judgment before discovery).

But where a defendant files a pre-discovery summary judgment motion, the nonmovant may request that the Court defer consideration of that motion pursuant to Rule 56(d). *Haynes*, 924 F.3d at 523 (citing Fed. R. Civ. P. 56(d)). Plaintiff has done so here. *See* Pl.'s Opp'n at 6 (requesting discovery under Rule 56(d)). "To obtain [such] relief, a Rule 56(d) movant must" submit a declaration or affidavit that: (1) "'outline[s] the particular facts [he] intends to discover and describe[s] why those facts are necessary to the litigation'; (2) explain[s] why [he] could not produce those facts in opposition to the pending summary-judgment motion; and (3) 'show[s] [that] the information is in fact discoverable.'" *Jeffries*, 965 F.3d at 855 (quoting *Convertino*, 684 F.3d at 99–100). "District courts should resolve each [Rule 56(d)] request based on its application

of the *Convertino* criteria to the specific facts and circumstances presented in the request." *U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26–27 (D.C. Cir. 2014).

Here, Plaintiff's Rule 56(d) declaration sets forth a number of facts that Plaintiff intends to discover in this case. *See* Greenberg Decl., ECF No. 13-1 at ¶¶ 1–12.  For example, Plaintiff intends to discover facts regarding his increased workload following his 2019 accommodation request.  *See id.* at ¶ 1.  He also intends to discover facts regarding email correspondence maintained by his former DOE supervisor, Mr. Glenn Watmann, including any of Mr. Watmann's email discussions or "derogatory jokes" regarding Plaintiff's cancer diagnosis.  *See id.* at ¶¶ 3–4. And Plaintiff's Rule 56(d) declaration explains that these facts "are necessary for litigation because [his] claim is that he was subjected to a hostile work environment, constructive discharge, and had his confidential medical information disclosed in violation of the Rehab[ilitation] Act."  *Id.* at 3; *see also* Compl. ¶¶ 75–95.  Plaintiff further contends that his proposed "[d]iscovery is necessary to establish record evidence to substantiate [his] allegations," specifically "including information regarding the motivation of Mr. Wattman for his conduct."  Greenberg Decl., ECF No. 13-1 at 3.

 Next, Plaintiff's Rule 56(d) declaration accurately asserts that "Plaintiff has not had [an] opportunity to perform discovery on the above intended facts, or any facts, because Defendant has filed its Motion prior to this Court issuing a scheduling order and permitting discovery."  *Id.* at 3. Plaintiff asserts, however, that the facts delineated in his Rule 56(d) declaration "are discoverable through written discovery requests or depositions."  *Id.*  To that end, Plaintiff specifically makes clear his intention to depose Mr. Wattman, as well as another DOE supervisor, Ms. Ingrid Kolb, regarding her review of the allegedly "threatening" email Plaintiff received from Mr. Wattman on June 26, 2019.  *See id.* ¶ 6; Compl. ¶¶ 68–73.

Upon consideration of Plaintiff's Rule 56(d) declaration and the *Convertino* factors outlined above, the Court will deny Defendant's motion for summary judgment without prejudice. *See* Fed. R. Civ. P. 56(d)(1).  The Court concludes that Plaintiff's declaration adequately sets forth the specific facts he intends to discover and indicates how those facts are necessary to this litigation.  *See Jeffries*, 965 F.3d at 855.  Here, the Court also notes that the facts identified in Plaintiff's Rule 56(d) declaration, such as internal email correspondences, derogatory jokes made about Plaintiff's cancer, and the relative treatment of Plaintiff's colleagues, clearly relate to a hostile work environment claim.  Plaintiff's declaration also indicates that testimonial and documentary evidence from Mr. Wattman would be particularly germane to each of Plaintiff's three claims, which all depend directly on Mr. Wattman's conduct.  *See* disc. *infra* at 14–24. Moreover, Plaintiff's Rule 56(d) declaration accurately indicates that no discovery has yet taken place in this case, and Plaintiff states his intention to procure fact discovery from Mr. Wattman, and others, through written discovery mechanisms and through depositions.  *See* Greenberg Decl., ECF No. 13-1 at 3.  In view of these factors, the Court will not consider Defendant's summary judgment motion at this time and, instead, **DENIES** Defendant's Rule 56 motion **WITHOUT PREJUDICE**.  *See Alston v. Johnson*, 208 F. Supp. 3d 293, 299 (D.D.C. 2016) (denying summary judgment under Fed. R. Civ. P. 56(d)).  In making this decision, the Court relies upon the "broad discretion" it exercises in matters of case management and discovery.  *Jeffries*, 965 F.3d at 855.

### 2.  Consideration Of Defendant's Exhibits Upon A Motion To Dismiss

Because the Court will not consider Defendant's motion for summary judgment, it must address which of Defendant's thirteen exhibits it may still review with Defendant's Rule 12(b)(6) motion.  As a general rule, "a court is restricted from considering matters 'outside' the pleadings" when "deciding a motion brought under Rule 12(b)(6)."  *Hinton v. Corr. Corp. of Am.*, 624 F.

Supp. 2d 45, 46 (D.D.C. 2009) (citing Fed. R. Civ. P. 12(d)).  On a Rule 12(b)(6) motion, however, courts may consider documents attached to or incorporated in the complaint, matters of which a court may take judicial notice, and matters of public record.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017) (citing Fed. R. Evid. 201(b)).  Moreover, "where a document is referred to in the complaint and is central to [the] plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 Fed. App'x. 4 (D.C. Cir. 2002); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### a.  Exhibits 2, 3, and 10–13

First, the Court will address Exhibits 2, 3, and 10 through 13, which are each documents related to Plaintiff's initial equal employment opportunity ("EEO") complaint with the Department of Energy.  To begin with, Exhibit 11 is Plaintiff's formal EEO complaint, filed in August 2019 with the Agency.  *See* Def.'s Mot., Ex. 11, ECF No. 12-13 (Aug. 2019 EEO Compl.).  Such administrative complaints are public records subject to judicial notice and properly considered on a motion to dismiss.  *Klotzbach-Piper v. Nat'l R.R. Passenger Corp.*, 373 F. Supp. 3d 174, 182 (D.D.C. 2019).  Moreover, Plaintiff has incorporated Exhibit 11 by reference in his Complaint. *See* Compl. ¶ 10 (expressly referencing Plaintiff's August 2019 administrative complaint). Relatedly, Exhibit 10 is Plaintiff's informal EEO discrimination complaint filed with the Department of Energy in July 2019, which Plaintiff also incorporates by reference in his Complaint.  *See id.* ¶ 9.  Finally, Exhibits 12 and 13 are formal notices from the Department of Energy acknowledging the receipt and acceptance of Plaintiff's EEO complaint of discrimination, which Plaintiff incorporates by reference in his Complaint as well.  *See id.* ¶¶ 11–12; *Ndondji v.*

*InterPark Inc.*, 768 F. Supp. 2d 263, 272 (D.D.C. 2011) ("A court may consider an EEOC complaint and Notice of Charge without converting a motion to dismiss into a motion for summary judgment . . .") (quotation omitted). For these reasons, the Court finds that Defendant's Exhibits 10, 11, 12, and 13 are properly subject to consideration when adjudicating Defendant's Rule 12(b)(6) motion to dismiss.

Conversely, the Court will exclude Exhibits 2 and 3 from consideration on Defendant's motion to dismiss. Respectively, these documents are EEO Investigative Affidavits submitted by Mr. Glenn Wattman and Ms. Ingrid Kolb, which contain their detailed statements regarding Plaintiff's discrimination complaint against the Department of Energy. *See* Def.'s Mot. at 19–20 (citing to the contents of the Wattman and Kolb affidavits). Contrary to Defendant's assertion, however, these documents are not clearly incorporated by Plaintiff's Complaint. While the Complaint does reference Plaintiff's EEO charge and the Agency's formal response thereto, *see* Compl. ¶¶ 9–11, the Court finds nothing in the Complaint that would incorporate these selected investigative affidavits into the pleadings.

To counter this point, Defendant advances an expansive theory of the incorporation by reference doctrine that would permit consideration of all exhibits "concerning" Plaintiff's EEO complaint and investigation. *See* Def.'s Reply at 2. This theory, however, goes too far, and Defendant has not cited to any binding authority that compels such a broad application of the incorporation by reference doctrine. Instead, Defendant cites to various district court decisions within this jurisdiction that have considered certain EEO documents at the motion to dismiss stage. *See, e.g.*, *Alston v. Johnson*, 208 F. Supp. 3d 293, 298 (D.D.C. 2016); *Hicklin v. McDonald*, 110 F. Supp. 3d 16, 19 (D.D.C. 2015). But these decisions focus on the incorporation of formal EEO complaints and agency responses at the pleading stage, for example, in the context of a statute of

limitations defense.  *See Perez v. D.C. Dep't of Employment Servs.*, 305 F. Supp. 3d 51, 59 (D.D.C. 2018).  These cases do not, however, create a blanket rule that *all* related documentation concerning an underlying EEO complaint is incorporated into the pleadings by any reference to the corresponding EEO charge.

Indeed, such a rule would distort the lines between a Rule 12(b)(6) motion to dismiss and a Rule 56 motion for summary judgment by allowing a defendant to support a motion to dismiss with a wide array of fact-based documentation upon which the complaint itself does not rely.  *See Gordon v. Nat'l Youth Work All.*, 675 F.2d 356, 360 (D.C. Cir. 1982) (noting "the importance of providing plaintiffs with the essential safeguards of summary judgment procedure whenever they face a motion to dismiss that turns on questions of fact"); *Hurd v. District of Columbia*, 864 F.3d 671, 687 (D.C. Cir. 2017) (same).  Here, for example, the investigative affidavits in Exhibits 2 and 3 may "concern" Plaintiff's employment claims, but the factual statements from Mr. Wattman and Ms. Kolb within these affidavits are not "integral" to viability of Plaintiff's Complaint.  *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).  Accordingly, the Court finds that Exhibits 2 and 3 are not incorporated into the pleadings by reference.

Finally, neither Exhibit 2 nor Exhibit 3 is subject to judicial notice.  "A federal court may take judicial notice of 'a fact that is not subject to reasonable dispute' if it either 'is generally known within the trial court's territorial jurisdiction' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *Hurd*, 864 F.3d at 686 (quoting Fed. R. Evid. 201(b)).  But a court may not take judicial notice of documents "for the truth of the matter asserted" therein.  *Id.*  Here, Defendant cites to the factual content of the statements in Exhibits 2 and 3 to dispute Plaintiff's allegations in the Complaint.  *See* Def.'s Mot. at 19–20 (citing to the contents of the Wattman and Kolb affidavits).  Such material is not subject to judicial

notice when considering a motion to dismiss and is, instead, appropriately left for the summary judgment stage.  In sum, the Court finds that Exhibits 2 and 3 are documents outside of the pleadings that cannot be considered without converting Defendant's motion into one for summary judgment.

### b. Exhibits 5–9

Next, in Exhibits 5 through 9 Defendant has included email chains from 2019 involving Plaintiff and addressing his employment at the Department of Energy.  As an initial matter, none of these emails are documents of public record or materials subject to judicial notice.  *See Hurd*, 864 F.3d at 686 (quoting Fed. R. Evid. 201(b)).  Accordingly, the email correspondences in Exhibits 5 through 9 must be excluded from consideration on Defendant's motion to dismiss, unless they are incorporated into Plaintiff's Complaint itself.  *See id.* at 678.

Here, the Court finds that the Complaint does incorporate the June 26, 2019 email from Glenn Wattman to Plaintiff at 1:42 PM, which appears in Exhibits 5, 6, and 7.  *See Mpoy v. Rhee*, 758 F.3d 285, 290 n.1 (D.C. Cir. 2014) (citations omitted) (affirming district court's consideration of email incorporated by reference in its determination of Rule 12 motion).  In fact, the allegations in the Complaint clearly reference this specific correspondence from Mr. Wattman to Plaintiff, including by direct quotation.  *See, e.g.*, Compl. ¶ 68 ("Mr. Wattman's June 26, 2019 email also threatened that Mr. Wattman would take 'appropriate action' . . . ").  Beyond this specific email from Mr. Wattman to Plaintiff, however, the Complaint does not incorporate any of the remaining email correspondence presented in Defendant's Exhibits 5 through 9.  To the contrary, the material found in these additional emails is not "integral" to the Complaint, *see Kaempe*, 367 F.3d at 965, but instead offers factual content meant to refute Plaintiff's allegations at the pleading stage, *see, e.g.*, Def.'s Mot. at 13–14.  Such documentation is characteristically outside of the pleadings and

must be excluded upon review of a Rule 12(b)(6) motion to dismiss.  *Menoken v. Dhillon*, 975 F.3d 1, 8 (D.C. Cir. 2020); *see also* Charles Allen Wright et al., 5C Fed. Prac. & Proc. Civ. § 1366 (3d ed. 2010).

### c.  Exhibits 1 and 4

Finally, in Exhibit 1 and Exhibit 4, Defendant has appended two miscellaneous documents to his motion, which are both outside of the pleadings.  Specifically, Exhibit 1 is a nine-page document from the Office of Aviation Management, which contains a description of Plaintiff's responsibilities as an Aviation Policy Officer with the Department of Energy.  *See* Def.'s Mot. at 13 n.4 (quoting from Exhibit 1).  Exhibit 4 is a redacted Form SF-50, "Notification of Personnel Action," which indicates the date of Plaintiff's retirement.  *See* Def.'s Mot. at 23 (citing to Exhibit 4).  These documents, however, are not matters of public records or susceptible to judicial notice.  *See Hurd*, 864 F.3d at 686 (quoting Fed. R. Evid. 201(b)).  Moreover, neither Exhibit 1 nor Exhibit 4 is incorporated into the pleadings by reference in the Complaint.  Accordingly, the Court will exclude both Exhibits 1 and 4 from consideration when addressing Defendant's motion to dismiss.  *See* Fed. R. Civ. P. 12(d).

## B.  Plaintiff's Substantive Claims

The Court will now consider each of Plaintiff's three substantive claims.  *See* Compl. ¶¶ 75–95.  For the reasons set forth above, the Court will only address whether these claims survive under Rule 12(b)(6).  And in making this determination, the Court considers only the Complaint itself, along with Defendant's Exhibits 10, 11, 12, and 13, as well as the June 26, 2019 email from Glenn Wattman to Plaintiff at 1:42 PM, which appears in Exhibits 5, 6, and 7.

### 1.  Count I – Hostile Work Environment

In Count I of the Complaint, Plaintiff asserts a hostile work environment claim for disability discrimination under the Rehabilitation Act of 1973.  *See* Compl. ¶¶ 1, 75–81.  As an

initial matter, the D.C. Circuit has not affirmatively decided "whether the Rehabilitation Act provides a cause of action for a hostile work environment." *Sanders v. Kerry*, 180 F. Supp. 3d 35, 45 n.10 (D.D.C. 2016).  Nonetheless, "the D.C. Circuit has been willing to assume that a hostile work environment could be a form of discrimination under the Rehabilitation Act," *Bonnette v. Shinseki*, 907 F. Supp. 2d 54, 80 (D.D.C. 2012) (citing *Kuraner v. Mineta*, No. 00-5416, 2001 WL 936369, at *1 (D.C. Cir. July 10, 2001) (per curiam)), and trial courts in this jurisdiction consistently recognize the viability of hostile work environment claims under the Rehabilitation Act, *see Webster v. United States Dep't of Energy*, 443 F. Supp. 3d 67, 81 (D.D.C. 2020); *Congress v. District of Columbia*, 277 F. Supp. 3d 82, 91 (D.D.C. 2017).  Neither does Defendant challenge the existence of such a claim in his present motion.  *See* Def.'s Mot. at 8–9.  Accordingly, the Court will recognize the existence of a hostile work environment claim under the Rehabilitation Act here.

"To establish a *prima facie* hostile work environment claim based on disability, a plaintiff must allege facts demonstrating that: '(1) [he] is disabled or is perceived as disabled; (2) [he] was subjected to unwelcome harassment; (3) the harassment occurred because of [his] disability or the perception that [he] was disabled; (4) the harassment affected a term, condition, or privilege of employment; and (5) there is a basis for holding the employer liable for the creation of the hostile work environment.'" *Thompson v. District of Columbia*, 272 F. Supp. 3d 17, 23 (D.D.C. 2017) (quoting *Floyd v. Lee*, 968 F. Supp. 2d 308, 328 (D.D.C. 2013)).  The plaintiff must also "show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "To determine whether a hostile

work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201.

As a threshold matter, Plaintiff adequately pleads a "disability" under the Rehabilitation Act to support his hostile work environment claim.  The Rehabilitation Act incorporates the standards set forth in the Americans with Disabilities Act ("ADA"), *see* 29 U.S.C. § 791(f), which defines a "disability" as "'a physical or mental impairment that *substantially limits* one or more *major life activities* of such individual,'" *Alexander v. Washington Metro. Area Transit Auth.*, 826 F.3d 544, 546 (D.C. Cir. 2016) (emphasis added) (quoting 42 U.S.C. § 12102(1)).  Notably, the Equal Employment Opportunity Commission's ("EEOC") implementing regulations for the ADA specify that "cancer substantially limits normal cell growth," 29 C.F.R. § 1630.2(j)(3)(iii), and that "normal cell growth" constitutes a "major life activity," *id.* § 1630.2(i)(1)(ii).[3]

In his Complaint, Plaintiff makes clear that "[c]ancer is a medical condition that substantially impairs [his] normal cell growth."  Compl. ¶ 25.  Plaintiff then plainly alleges that he "was diagnosed with prostate cancer" in 2013, *id.* ¶ 23, and that by 2019 the cancer "had spread to his bladder," *id.* ¶ 24.  Plaintiff also alleges that because the cancer spread to his bladder it "substantially impaired his ability to urinate."  *Id.* ¶ 26.  Finally, Plaintiff alleges that in 2019 his bladder cancer "required him [to] undergo additional medical treatment," *id.* ¶ 29, which included "surgery, follow up chemotherapy treatments, and medical appointments," *id.* ¶ 31.  At the motion to dismiss stage, these allegations regarding Plaintiff's cancer are sufficient to plead a "disability" under the ADA, and therefore under the Rehabilitation Act as well.  This is particularly the case

---

[3]   "Congress has delegated to the [EEOC] the responsibility for issuing regulations to enforce the proscription against discrimination in employment under the ADA."  *Duncan v. Washington Metro. Area Transit Auth.*, 240 F.3d 1110, 1121 (D.C. Cir. 2001) (citing 42 U.S.C. § 12116)).

given the EEOC's explicit guidance regarding cancer qualifying as a "disability," and Congress's direction "that '[t]he definition of disability shall be construed in favor of broad coverage.'" *Alexander*, 826 F.3d at 546 (quoting 42 U.S.C. § 12102(4)(A)).   Accordingly, Plaintiff has adequately alleged a disability to support his hostile work environment claim under the Rehabilitation Act.  *See* Compl. ¶ 76.

Next, Plaintiff has sufficiently alleged that because of this disability, he suffered workplace harassment at the Department of Energy, which affected his working conditions and for which Defendant may be held liable.  *See Thompson*, 272 F. Supp. 3d at 23.   Specifically, Plaintiff's hostile work environment allegations derive from the alleged conduct of his immediate supervisor at the DOE, Mr. Glen Wattman.   Plaintiff alleges that Mr. Wattman granted Plaintiff's "leave requests because of [his] disability" beginning in February 2019, but then "repeatedly complained to [Plaintiff] about his use and taking of leave."   Compl. ¶ 42.   According to Plaintiff, "Mr. Wattman did not complain about [his] use of leave taken in prior years unrelated to Plaintiff's disability."  *Id.* ¶ 43.   Furthermore, Plaintiff alleges that "Mr. Wattman repeatedly called [him] while on leave for his disability about work and pressured him to return to work."  *Id.* ¶ 44.   And after Plaintiff did return to work, Mr. Wattman allegedly "began increasing Plaintiff's workload," *id.* ¶ 46, claiming that Plaintiff "was not at capacity" and providing him with more work than his colleagues, *id.* ¶¶ 47–48.

Beginning in February 2019, Mr. Wattman also allegedly made "repeated derogatory jokes about [Plaintiff's] cancer and medical treatment, including whether [Plaintiff] was wearing a diaper, or if he was sitting 'on the pan.'"  *Id.* ¶ 50.   Moreover, Mr. Wattman allegedly disclosed Plaintiff's cancer to Plaintiff's customers and coworkers, *id.* ¶ 56, including by telling one coworker that Plaintiff "was going to be 'sitting in the chair,' which Plaintiff understood to be

referring chemotherapy for his cancer treatment," *id.* ¶ 57.  Throughout this time, Mr. Wattman also "repeatedly use capitalization in his emails to [Plaintiff], which [Plaintiff] understood as a written form of yelling." *Id.* ¶ 51.  And on June 26, 2019, Mr. Wattman sent Plaintiff a threatening email indicating "that Mr. Wattman would take 'appropriate action' related to the 'quality of life' and 'working conditions' he had established for [Plaintiff]." *Id.* ¶ 69; *see also* Def.s Mot., Ex. 5, ECF No. 12-7 (June 26, 2019 Email).  Finally, Plaintiff alleges that "Defendant was aware of the hostile work environment created by Mr. Wattman" through these actions, but "refused to take corrective action." Compl. ¶ 81.

It is true, as Defendant argues, that some of these allegations regarding Plaintiff's working conditions in 2019 are not individually "extreme." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Namely, Plaintiff's complaints about assignment distribution and his personal working capacity, *see* Compl. ¶¶ 46–48, on their own, may very well fall "within the bounds of 'ordinary tribulations [in] the workplace,'" *Aldrich v. Burwell*, 197 F. Supp. 3d 124, 138 (D.D.C. 2016) (quoting *Faragher*, 524 U.S. at 788).  The Court does not consider such incidents in isolation, however, but instead must evaluate the "totality of the circumstances" alleged in the Complaint.  *Baloch*, 550 F.3d at 1201.  And here, Mr. Wattman also repeatedly made "derogatory jokes" in February and March of 2019 about Plaintiff's cancer and medical treatment.   Compl. ¶ 50.  These jokes occurred while Plaintiff was battling the spread of his cancer and undergoing radiation sessions, *see id.* ¶¶ 23–41, and allegedly included comments about Plaintiff "wearing a diaper" and "sitting on the pan," a reference to a medical device Plaintiff used while undergoing treatment, *id.*  Moreover, Mr. Wattman allegedly disclosed Plaintiff's cancer to customers and coworkers without Plaintiff's permission, noting to one coworker that Plaintiff would be "sitting in the chair," a reference to chemotherapy.  *Id.* ¶¶ 56–57.  When considering the totality of these

circumstances then, *Baloch*, 550 F.3d at 1201, Plaintiff has alleged conduct that is sufficiently severe and pervasive to affect his employment conditions and state a plausible hostile work environment claim at the motion to dismiss stage, *see Kruger v. Cogent Commc'ns, Inc.*, 174 F. Supp. 3d 75, 84 (D.D.C. 2016) (denying motion to dismiss hostile work environment claim).

As a final matter, the Court notes that Defendant does not raise a formal exhaustion defense against Plaintiff's hostile work environment claim. *Cf.* Compl. ¶¶ 8–14 (alleging exhaustion of administrative remedies). Instead, Defendant contends that some of Plaintiff's individual hostile work environment *allegations* were not "exhausted," because Plaintiff omitted those allegations from his underlying EEO complaint with the Agency. *See* Def.'s Mot. at 12–13. Specifically, Defendant asserts that because Plaintiff did not allege "increased work assignments" in his EEO complaint, *see* Compl. ¶ 46, the Court should now disregard such allegations when evaluating Plaintiff's hostile work environment claim in Count I of the Complaint, *see* Def.'s Mot. at 12. Defendant also argues that because Plaintiff's EEO complaint references only the June 26, 2019 email from Mr. Wattman, *see* Def.'s Mot., Ex. 5, ECF No. 12-7 (June 26, 2019 Email), the Court should discount any allegations of additional emails that Mr. Wattman may have sent, *see* Def.'s Mot. at 13.

The Court is not persuaded by this line of argument. First, even if the Court disregarded Plaintiff's allegations of "increased work assignments" and focused on no other email correspondence but the June 26, 2019 email from Mr. Wattman, Plaintiff's allegations would still state a plausible hostile work environment claim. As explained above, Plaintiff's additional allegations regarding Mr. Wattman's repeated derogatory comments about Plaintiff's cancer, in conjunction with Mr. Wattman's "threatening" June 26, 2019 email, are enough to survive a motion to dismiss under Rule 12(b)(6).

More fundamentally though, the "partial exhaustion" rule Defendant advances lacks merit. *See* Def.'s Mot. at 12–13.  Defendant cites to *Marshall v. Fed. Exp. Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997), for the proposition that a plaintiff may only support a properly exhausted claim with allegations clearly presented at the administrative level.  But the holding in *Marshall* applies to the exhaustion of *entire claims*, not to the exhaustion of specific allegations.  *See id.* at 1098.  In fact, the *Marshall* court made clear that "[n]aturally every detail of the eventual complaint need not be presaged in the EEOC filing."  *Id.*  Moreover, "the exhaustion requirement on a hostile work environment claim is less stringent than for stand-alone claims of discrimination and retaliation, as a plaintiff need only have filed an EEOC complaint alleging some of the claims that comprise the hostile work environment claim."  *Leach v. Nat'l R.R. Passenger Corp.*, 128 F. Supp. 3d 146, 153 (D.D.C. 2015) (quotation omitted).  Accordingly, the Court finds no basis for selectively excluding any of the individual hostile work environment allegations in Plaintiff's Complaint, particularly where Defendant does not even challenge that this claim itself was properly exhausted.

For the reasons set forth above, the Court **DENIES** Defendant's motion to dismiss Count I of the Complaint under Rule 12(b)(6).

### 2.  Count III – Constructive Discharge

Next, Plaintiff asserts a related claim for "constructive discharge" in Count III of his Complaint, arising from his August 8, 2019 resignation from the Department of Energy.  *See* Compl. ¶¶ 86–95.  To state a claim for constructive discharge,[4] a plaintiff must allege that "'(1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that [ ]he had no option

---

[4] "There is some dispute in this district over whether constructive discharge can be a standalone cause of action."  *Codgell v. Murphy*, No. CV 19-2462 (RC), 2020 WL 6822683, at *13 (D.D.C. Nov. 20, 2020) (collecting cases).  But because the Court will dismiss Count III of the Complaint on alternative grounds, this dispute does not impact the disposition of Plaintiff's constructive discharge claim.

but to end h[is] employment.'"  *Cole v. Powell*, 605 F. Supp. 2d 20, 25 (D.D.C. 2009) (quoting *Turner v. District of Columbia*, 383 F. Supp. 2d 157, 171 (D.D.C. 2005)).  "Constructive discharge does not, however, 'occur when an employee leaves an unpleasant but objectively tolerable job because alternatives have become more attractive, even if the employer's misbehavior creates the unpleasantness.'"  *Robinson v. Ergo Sols., LLC*, 85 F. Supp. 3d 275, 283 (D.D.C. 2015) (quoting *Taylor v. FDIC*, 132 F.3d 753, 766 (D.C. Cir. 1997)).  "The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?"  *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004).

Within this framework, Plaintiff has not presented sufficient allegations in his Complaint to state a plausible claim for constructive discharge.  The allegations Plaintiff offers in support of his constructive discharge claim are substantively identical to those allegations supporting his hostile work environment claim.  *Compare* Compl. ¶ 79; *with id.* ¶ 91.  Indeed, Plaintiff alleges his constructive discharge claim as the logical continuation of the alleged hostile work environment created by Mr. Wattman's conduct.  *See id.* ¶¶ 91–95.  "But as the Supreme Court [has] made clear . . . the standards for hostile work environment and constructive discharge claims are not coextensive."  *Steele v. Schafer*, 535 F.3d 689, 694 (D.C. Cir. 2008) (citing *Suders*, 542 U.S. at 133–34).  To the contrary, a plaintiff must allege "something more than, say, a hostile work environment claim alone," because "unless conditions are beyond ordinary discrimination, a complaining employee is expected to remain on the job while seeking redress."  *Robinson*, 85 F. Supp. 3d at 283 (quotations omitted).

Plaintiff's Complaint does not allege this additional step.  While Plaintiff asserts that he resigned on August 8, 2019 due to Mr. Wattman's conduct, *see* Compl. ¶ 74, he offers no allegations to plausibly demonstrate why the conditions created by Mr. Wattman's conduct became

"so intolerable that a reasonable person in the [his] position would have felt compelled to resign."

*Suders*, 542 U.S. at 141.  Relatedly, the Complaint contains no factual allegations to plausibly

demonstrate the absence of an opportunity for "remediation on the job."  *Veitch v. England*, 471

F.3d 124, 130 (D.C. Cir. 2006).  Without any such allegations, Plaintiff has not stated a plausible

claim for constructive discharge.  *See Robinson*, 85 F. Supp. 3d at 284 (dismissing constructive

discharge claim on motion to dismiss).  Accordingly, the Court **GRANTS** Defendant's motion to

dismiss Count III of the Complaint under Rule 12(b)(6).

### 3.   Count II – Disclosure Of Confidential Medical Information

Finally, in Count II of the Complaint, Plaintiff asserts a claim for the wrongful disclosure

of his confidential medical information.  *See* Compl. ¶¶ 82–85.  The Rehabilitation Act requires

"that the information disclosed pursuant to an employer's medical inquiry spreads no farther than

necessary to satisfy the legitimate needs of both employer and employee."  *Doe v. United States*

*Postal Serv.*, 317 F.3d 339, 344 (D.C. Cir. 2003) (citing 42 U.S.C. § 12112(d)).  "[A] mere

technical violation" of the Rehabilitation Act's confidentiality requirement, however, "will not in

and of itself give rise to damages liability."  *Porfiri v. Eraso*, 121 F. Supp. 3d 188, 199 (D.D.C.

2015) (quotation omitted).  Instead, to state a claim for the wrongful disclosure of confidential

medical information, a plaintiff "must show that an unauthorized disclosure of medical information

resulted in a 'tangible injury.'"  *Id.* at 199 (quoting *Koch v. Walter*, 935 F.Supp.2d 164, 176

(D.D.C.2013)).

Plaintiff has provided sufficient allegations to state a plausible claim for the wrongful

disclosure of his medical information under the Rehabilitation Act.  First, Plaintiff alleges that in

January 2019, he informed his DOE supervisor, Mr. Wattman, of his bladder cancer after Mr.

Wattman inquired into Plaintiff's basis for requesting medical leave.  *See* Compl. ¶¶ 30–31.

Plaintiff, however, "did not authorize Mr. Wattman to disclose his disability or [the] reason for his

leave to Plaintiff's customers or coworkers." *Id.* ¶ 55.   Nonetheless, Mr. Wattman allegedly

disclosed the fact of Plaintiff's cancer to a number of Plaintiff's coworkers and customers. *See id.*

¶¶ 52–57.   For example, Plaintiff alleges that Mr. Wattman made references to a coworker named

Dan Monahon in the spring of 2019 regarding Plaintiff's chemotherapy treatment. *See id.* ¶ 57.

Plaintiff also alleges that Mr. Wattman disclosed Plaintiff's cancer status to two individual

customers, Mr. Alex Bapty and Mr. Steven Warner, who then made comments to Plaintiff

regarding his cancer. *See id.* ¶¶ 61–64.   In fact, Mr. Warner allegedly told Plaintiff that "Mr.

Wattman was discussing [Plaintiff] having cancer in his emails to him." *Id.* ¶ 63.   Finally, Plaintiff

notes that Mr. Wattman stated in his June 26, 2019 email: "I'm stuck between making excuses and

disclosing your private issues that have been distracting for you (health)." *Id.* ¶ 66; *see also* Def.'s

Mot., Ex. 5, ECF No. 12-7 (June 26, 2019 Email).   Taken together, these allegations plausibly

allege, at the motion to dismiss stage, that Mr. Wattman disclosed Plaintiff's confidential cancer

treatment without authorization.[5]

Next, Plaintiff has also alleged a "tangible injury," resulting from Mr. Wattman's

disclosure of his cancer. *Porfiri*, 121 F. Supp. 3d at 199.   Specifically, Plaintiff alleges that he

"suffered emotional distress from Defendant's disclosure of his medical information to his

coworkers and customers." Compl. ¶ 85.   Plaintiff also asserts that Mr. Wattman's disclosure of

Plaintiff's cancer to coworkers and customers contributed to a severe and pervasive hostile work

environment, *see id.* ¶¶ 79–81, which led to Plaintiff's resignation from the Department of Energy

on August 8, 2019, *see id.* ¶ 74.   While there is a dearth of precedent in this jurisdiction addressing

the contours of a "tangible injury" under the Rehabilitation Act's confidentiality provision, *see* 42

---

[5] Defendant argues that Plaintiff voluntarily disclosed his cancer in a May 23, 2019 email to Ms. Patricia
Hagerty. *See* Def.'s Mot. at 21–22 (quoting Exhibit 9).   This May 23, 2019 email, however, is outside of
the pleadings and cannot be considered with Defendant's motion to dismiss under Rule 12(b)(6). *See* Fed.
R. Civ. P. 12(d); disc. *supra* at 13–14.

U.S.C. § 12112(d), at least one court has cited approvingly to the recognition of emotional distress as a cognizable injury under the Act, *Porfiri*, 121 F. Supp. 3d at 199 (citing *EEOC v. Ford Motor Credit Co.*, 531 F. Supp. 2d 930, 941 (M.D. Tenn. 2008) ("[S]hame, embarrassment, and depression" that is suffered "as a result of [an allegedly improper] disclosure" may count as a tangible injury under § 12112(d).)).  The Court finds this precedent to be persuasive, and Defendant has not cited any binding authority indicating that such an allegation is inadequate at the motion to dismiss stage.  *See* Def.'s Mot. at 22–23.  Accordingly, the Court concludes that Plaintiff's allegations of emotional distress plausibly demonstrate a "tangible injury" resulting from Mr. Wattman's disclosure of Plaintiff's confidential medical information.

Plaintiff has, therefore, adequately stated a claim under the Rehabilitation Act for the improper disclosure of his confidential medical information.  Consequently, the Court **DENIES** Defendant's motion to dismiss Count II of the Complaint under Rule 12(b)(6).

## IV.   CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court **DENIES WITHOUT PREJUDICE** Defendant's motion for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 56(d).  The Court, however, **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss pursuant to Rule 12(b)(6).  Specifically, the Court denies Defendant's motion to dismiss Plaintiff's claims for a hostile work environment and for the disclosure of confidential medical information in Counts I and II of the Complaint, respectively.  Conversely, the Court grants Defendant's motion to dismiss Plaintiff's claim for constructive discharge and **DISMISSES** Count III of the Complaint **WITHOUT PREJUDICE**.

An appropriate Order accompanies this Memorandum Opinion.

**Date**: December 11, 2020

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge